# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* MICHAEL J. FISHER, *et al.*, | § § § § § § § § § | |
| *Plaintiffs/Relators,* | | Civil Action No. 4:16-cv-00394 |
| v. | | Judge Mazzant |
| WELLS FARGO BANK, N.A., | | |
| *Defendant.* | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Dkt. #60). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

This is a case involving a *qui tam* action. The Second Amended Complaint ("SAC"), initiated by Michael J. Fisher and Yaqar Hogan ("Relators"), accuses Wells Fargo ("Defendant") of failing to perform its servicing duties in compliance with applicable federal, state, and local laws, regulations, statutes, ordinances, codes and requirements. The Court begins with a brief recitation of the factual and procedural disposition before turning to the parties' arguments.

## I.    Factual Background

This case stems from the 2008 housing crisis in the United States, which was caused, in part,  by predatory lending practices and mortgage fraud (*See* Dkt. #60; Dkt. #79). The 2008 crisis caused home prices to plummet and foreclosure to skyrocket, leaving homeowners with negative equity in their homes and no option to sell or refinance. In response, the Government enacted the Home Affordable Modification Program ("HAMP") to incentivize borrowers, note holders, and

servicers to modify residential home loans in ways that would reduce foreclosures (*See* Dkt. #60; Dkt. #79). Specifically, HAMP sought to incentivize modification by lowering interest rates and payments, extending terms, and potentially forgiving principal (Dkt. #79 at ¶ 1). Defendant agreed to participate in HAMP as a mortgage loan servicer (Dkt. #79 at ¶ 1). In connection with agreeing to participate in HAMP, Defendant executed a Purchase Financial Instrument and Servicer Participation Agreement ("SPA") dated April 13, 2009, and an Amended and Restated Commitment to Purchase Financial Instrument and Services Agreement dated March 16, 2010 (Dkt. #79 at ¶¶ 1, 18). Under these respective agreements, Defendant agreed that it would perform all servicing duties "in compliance with all applicable Federal, state, and local laws, regulations, regulatory guidance, statues, ordinances, codes and requirements." (*See* Dkt. #79 at ¶¶ 1, 19–20). Defendant submitted these certificates each year it participated in the HAMP program (Dkt. #79 at ¶ 21). Additionally, as an FHA-approved lender, Defendant participated in other programs to reduce the risk to lenders and encourage lending to borrowers (Dkt. #79 at ¶ 37). Similar to its obligations under HAMP, Defendant had to submit certifications confirming that it was complying with the HUD-FHA regulations (Dkt. #79 at ¶ 38).

## II.    NMS Litigation

Most, if not all, of Defendant's arguments for dismissal are based on a prior *qui tam* action that the Government was a party to (the "NMS Litigation"). As a result, the Court will briefly summarize the underlying facts of the NMS Litigation to provide the necessary context for Defendant's arguments. On March 14, 2012, the Government and numerous states filed the NMS Litigation against the five largest mortgage servicers, including Defendant (Dkt. #60-4 at ¶¶ 1–2). The crux of the NMS Litigation was that Defendant and the other four largest mortgage servicers, "in the course of their servicing and oversight of mortgage loans, the Banks violated federal laws,

2

program requirements and contractual requirements governing loss mitigation [and] engaged in a pattern of unfair and deceptive practices in the discharge of their loan servicing activities" (Dkt. #60 at ¶¶ 51, 56–58, 64–67).

On April 4, 2012, the Government settled their claims against Defendant pursuant to a Consent Judgment (Dkt. #60-4 at p. 100). To settle the claims, Defendant was required to do the following: (1) pay more than $5 billion dollars to foreclosed borrowers and certain consumers (Dkt. #60-4 at p. 102–03), and (2) submit to a compliance monitoring program for a term of three and one-half years (Dkt. #60-4 at p. 104–06).  The Government, in exchange for settling the claims, agreed to release Defendants from certain civil or administrative claims including, but not limited to, claims for violations of the FCA (*See* Dkt. # 60-4 at p. 331–22).

## III.    Procedural Background

On March 5, 2013, Relator Michael Fisher filed his Original Complaint in the Southern District of New York under seal. (Dkt. #10). It asserted causes of action for: (1) presenting false or fraudulent claims to the Government for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A); and (2) making or using false records or statements to the Government in violation of 31 U.S.C. § 3729(a)(1)(B) (Dkt. #10 at ¶¶ 51–52). Relator alleges that Defendant Wells Fargo engaged in misconduct that violated the Truth in Lending Act ("TILA") and Regulation Z as well as other various federal, state, and local laws (Dkt. #10 at ¶ 50).

During the seal period, which was extended several times, the Government decided to abstain from intervening in the case (Dkt. #11; Dkt. #12). Accordingly, on June 17, 2014, the Court unsealed the matter and ordered that the complaint shall be unsealed thirty-days after entry of the order (*See* Dkt. #9; Dkt. #11).

On December 17, 2015, Relators filed their SAC (Dkt. #79).[1] Relators SAC alleges the same general theory of False Claim Act ("FCA") liability as the Original Complaint (Dkt. #79 at ¶ 2). However, the SAC deviates from the Original Complaint in three ways: (1) it adds a new Relator, Yaqar Hogan, who alleges that she observed Defendant's failure to comply with its certifications while working as a compliance auditor in Defendant's loss mitigation department (Dkt. #79 at ¶ 7); (2) it adds a claim that Defendant submitted false certifications of compliance when participating in Federal Housing Administration ("FHA") programs (Dkt. #79 at ¶¶ 37–45); and (3) it adds allegations of servicing misconduct as additional reasons why Defendant's certifications were false (Dkt. #79 at ¶¶ 37–45).

On June 30, 2023, Defendant filed its Motion to Dismiss and alleged five separate ground for dismissal: (1) failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure; (2) claims pre-dating February 8, 2012, are barred by *res judicata*; (3) the SAC is barred by the government action bar of the FCA, 31 U.S.C. § 3730(e)(3); (4) the SAC is barred by the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4)(A); and (5) the SAC does not plead a viable claim under TILA or other similar state laws (Dkt. #60 at p. 2–3). After obtaining an extension of time to respond, Relators filed their Response in Opposition on September 27, 2023 (Dkt. #67). Defendant filed its Reply on October 30, 2023 (Dkt. #68). Relators filed their Sur-Reply in opposition to the Motion to Dismiss on November 6, 2023 (Dkt. #69).

---

[1] On June 15, 2016, the case was transferred from the Southern District of New York to this Court (Dkt. #30).

## LEGAL STANDARD

### I.    Rule 8(a) Standard

Federal Rule of Civil Procedure 8(a)(2) provides, in a general way, "the applicable standard of pleading." *Alamo Forensic Servs., L.L.C. v. Bexar Cnty., Texas*, 861 F. App'x. 564, 567 (5th Cir. 2021). Rule 8(a) does not "require pleading specific facts in support of each element of plaintiff's *prima facie* case." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004). Rather, "[i]t requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, FED. R. CIV. P. 8(a)(2), in order to give the defendant fair notice of what the claim is and the ground upon which it rests, *Twombly*, 550 U.S. at 555, 127 S. Ct. 1995." *Alamo Forensic Servs.*, 861 F. App'x. at 567 (citation modified). "Although a complaint need not contain detailed factual allegations, the showing contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusion or recite the elements of a cause of action." *Id.* (citation modified).

### II.    Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III.    Rule 41(b) Standard

Federal Rule of Civil Procedure 41(b) provides that "if the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." *Raymond v. Univ. of Houston*, 275 F. App'x. 448, 449 (5th Cir. 2008). Although the rule speaks of dismissal pursuant to a motion by the defendant, Rule 41(b) "authorizes the district court to dismiss an action *sua sponte* for failure to prosecute or comply with a court order." *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018). Dismissal under Rule 41(b) can be either with or without prejudice. *See Carraway v. Zeon*, 734 F. App'x. 301, 301 (5th Cir. 2018) (explaining that "[t]he scope of the district court's discretion is narrower when the Rule 41(b) dismissal is with prejudice or when a statute of limitations would bar re-prosecution of a suit dismissed under Rule 41(b) without prejudice."). However, "[d]ismissal with prejudice under Rule 41(b) are reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors." *Mayes v. Fedex Freight Inc.*, 584 F. App'x. 278, 278 (5th Cir. 2014). The aggravating factors include: "(1) delay caused by the plaintiff himself, not the attorney; (2) actual prejudice to the defendant; and (3) delay caused by intentional conduct." *Morgan v. Americas Ins. Co.*, 759 F. App'x. 255, 257 (5th Cir. 2019) (citation modified).

## ANALYSIS

Defendant argues that the Court should dismiss Relators' FCA claims in the SAC, either in whole or in part, with prejudice under Federal Rules of Civil Procedure 8(a), 12(b)(6), and 41(b) because (1) Relators have failed to prosecute their claims; (2) Relators' pre-February 8, 2012 claims are barred by *res judicata*; (3) Relators' claims are barred by the government action bar of the False Claims Act, 31 U.S.C. § 3730(e)(3); (4) Relators' claims are barred by the public disclosure bar of

the False Claims Act, 31 U.S.C. § 3730(e)(4)(A); and (5) Relators have failed to plead a viable claim under TILA or similar state laws (Dkt. #60 at p. 2–3). The Court addresses each argument in turn.

## I.    Failure to Prosecute

Federal Rules of Civil Procedure Rule 41(b) provides that a district court may, either upon the motion of a defendant or upon its own motion, dismiss an action "if the plaintiff fails to prosecute or to comply with these rules or a court order." *Raymond*, 275 F. App'x. at 449. Importantly, the Rule "does not itself impose a limit on a court's inherent power to dismiss sua sponte for lack of prosecution." *Yanz v. Dish Network, L.L.C.*, 140 F.4th 626, 632 (5th Cir. 2025) (citation modified). But, where, as here, Defendant moves to dismiss Relators' case with prejudice under Rule 41(b), the Court should grant such a request only when "there is a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interest of justice." *Buchanan v. United States*, 2024 WL 4057580, at *2 (5th Cir. Sept. 5, 2024) (citing *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018); *see also Griggs*, 905 F.3d at 844 (explaining that when the "dismissal is without prejudice, but the application statute of limitations probably bars future litigation, our examination is searching, and we review the dismissal as we would a dismissal with prejudice."). "In most cases, a plain record of delay or contumacious conduct is found if one of the three aggravating factors is also present: (1) delay caused by the plaintiff; (2) actual prejudice to the defendant; or (3) delay as a result of intentional conduct." *Id*. However, an aggravating factor does not need to be present for a district court to dismiss a case with prejudice; the presence of Rule 41(b)'s requisite factors can alone justify dismissal. *See Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) (rejecting Appellant's contention that to affirm a dismissal with prejudice an aggravating factor must be

present since the court has stated that "aggravating factors must usually be found" and not "they must always be found.").

Defendant argues that the Court should dismiss the SAC , it is entirety,  because Relators have failed to prosecute their claims (Dkt. #60 at p. 21–25). More specifically, Defendant argues that Relators significant delay in serving it with the SAC—which came more than ten years after the original complaint was filed, more than seven years after the SAC was filed, and almost seven years after the Government ceased investigating Relators' claims—warrants dismissal under Rule 41(b) of the Federal Rules of Civil Procedure (Dkt. #60 at p. 21). Indeed, according to Defendant, dismissal is particularly warranted under Rule 41(b) where, as here, Relators fail to serve  the complaint  within a year or two after the complaint is filed or before the limitation period (Dkt. #60 at p. 21–22).[2]  By contrast, Relator argues that the Court should reject Defendant's request for dismissal under Rule 41(b) because its argument is based on an erroneous understanding of the law (Dkt. #67 at p. 14). Specifically, Relator argues that Defendant failed to apply the five-factor test created by the Fifth Circuit to determine whether dismissal with prejudice is warranted; instead, Defendant's motion addressed, at most, only three of the five factors (Dkt. #67 at p. 14). More importantly, Relator claims that Defendant failed to address one of the mandatory dismissal factors in its motion,[3] which Relator contends that such a failure, on its own, causes Defendant's Rule 41(b) argument to fail (Dkt. #67 at p. 14).

Additionally, Relator argues that even if the Court disagrees, it

---

[2]  In addition to this argument, Defendant also contends that it is immaterial, for purposes of deciding whether dismissal is warranted under Rule 41(b), that the Court did not order the unsealing of the SAC until March 2022; instead, what matters is that the Government ceased investigating the case and seeking any extension of the seal in early 2016 (Dkt. #60 at p. 23). Thus, according to Defendant, after the Government ceased investigating the case, the burden fell on Relators (and the Government) to ensure that the Court unsealed the SAC in a timely manner (Dkt. #60 at p. 23–24).

[3]  The mandatory factor that Relator claims Defendant failed to address is the second requisite factor—i.e., whether lesser sanctions would not serve the best interests of justice (Dkt. #67 at p. 14).

should still reject Defendant's request for dismissal because a factor-by-factor examines makes clear that a dismissal with prejudice is improper (Dkt. #67 at p. 14).[4]

In its reply, Defendant stands firm. Defendant again argues that it was Relators conduct—i.e., failure to alert the Court that the Government declined to intervene in the case created a delay that prevented service within the limitations period—that caused prejudice to Defendant (Dkt. #68 at p. 7). Thus, Defendant contends that under Rule 41(b), Relators must be charged with the delay that their omission caused (Dkt. #68 at p. 7). Furthermore, in response to Relator's claim that Defendant's dismissal request must fail because it did not address all five factors required under Rule 41(b), Defendant contends that the five-factor test Relator relies on is inapplicable to this case (Dkt. #68 at p. 8).[5] According to Defendant, when dismissal under Rule 41(b) is sought based on a delay in service, the Fifth Circuit only requires that the Defendant show a clear record of delay that results in service of the complaint after the limitations period (Dkt. #68 at p. 8). However, Defendant contends that even if it had to show aggravating factors to justify dismissal, it has done so (Dkt. #68 at p. 8). On the other hand, in his Sur-Reply, Relator continues to maintain that Defendant's request must be rejected because it fails to address all five of the factors required under Rule 41(b) (Dkt. #69 at p. 2). Furthermore, in the Sur-Reply, Relator really takes issue with Defendant's continued insistence that he was obligated to act, which if he did, would not only

---

[4] Applying the facts of this case to the five factors test created by the Fifth Circuit, the Realtor argues that: (1) there is no clear record of delay because in a qui tam action for violations of the FCA Relator cannot serve a complaint on Defendant until the Court so orders; (2) Defendant fails to address, let alone argue, that lesser sanctions would not serve the best interest of justice, which is a mandatory factor that must be considered; (3) the delay in serving the SAC was caused by Relator's counsel, not Relator personally; (4) the delay in serving the SAC was not a result of intentional conduct by Relator; and (5) Defendant has failed to establish that the delay in serving the SAC has prejudiced it in defendant this action (*See* Dkt #67 at p. 14-18).

[5] Defendant argues that the five-factor test that Relator relies on is inapplicable in this case because the five-factor test applies only when "a Rule 41(b) dismissal is based on a plaintiff's failure to prosecute *after* serving the complaint." (Dkt. #68 at p. 8).

violate the FCA's plain text but would also be contrary to the Court's sealing order (Dkt. #69 at p. 2).

The Court must first decide what is the applicable test for determining whether dismissal with prejudice is warranted under Rule 41(b). As discussed above, Defendant argues that where, as here, dismissal is sought based on a delay in service, it need only show clear record of delay that results in service of the complaint after the limitation period has run (*See* Dkt. #60 at p. 21–22; Dkt. #68 at p. 8). In contrast, Relator argues that Defendant must, at the very minimum, address both of the mandatory factors for determining whether dismissal with prejudice is warranted under Rule 41(b) (*See* Dkt. #67 at p. 14; Dkt. #69 at 2–3). The Court agrees with Relator. When deciding this issue, the Fifth Circuit has emphasized that dismissal with prejudice is a "draconian remedy [that] should not be used lightly, and should be used only under extreme circumstances." *Johnson v. Jones*, 794 F. App'x. 400, 402 (5th Cir. 2019) (citation modified). As a result, it is well-established that Rule 41(b) allows dismissal with prejudice "only where this is a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) whether lesser sanctions would not serve the best interest of justice." *Id.* at 402–03. The presence of the two requisite factors, without more, is enough to justify dismissal with prejudice. *See Sealed Appellant*, 452 F.3d at 418. However, in most cases, at least one of the three aggravating factors is present when a clear record of delay or contumacious conduct is found. *See Buchanan*, 2024 WL 4057580 at *2.

Having now determined the applicable test for deciding whether dismissal with prejudice is warranted under Rule 41(b), the Court must decide if Defendant has established (1) a clear record of delay or contumacious conduct by the plaintiff and (2) whether lesser sanctions would not serve the best interest of justice. *See Johnson*, 794 F. App'x. at 402. As to the first requisite factor, the

Fifth Circuit has repeatedly recognized that the "delay which warrants dismissal with prejudice must be longer than just a few months; instead, the delay must be characterized by significant periods of total inactivity." *Shaw v. United States*, 2024 WL 1113013, at *2 (5th Cir. Mar. 14, 2024) (citing *Millian v. USAA Gen. Idem. Co.*, 546 F.3d 321, 326–27 (5th Cir. 2008). Additionally, the Fifth Circuit has also recognized that "a delay between filing and service ordinarily is to be viewed more seriously than a delay of a like period of time occurring after service of process." *Shaw*, 2024 WL 1113013 at *2. (citing *Sealed Appellant*, 452 F.3d at 419–20). As for the second requisite factor, "[w]hen lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice." *Id.* at *3 (citing *In re Taxotere (Docetaxel) Prods. Liab. Lit.*, 966 F.3d 351, 360 (5th Cir. 2020)). Such lesser sanctions include, but are not limited to, "conditional dismissals, dismissals without prejudice, and explicit warnings by the district court." *Id.* Furthermore, "providing plaintiff with a second or third chance is itself a lenient sanction, which, when met with further default, may justify imposition of the ultimate sanction of dismissal with prejudice." *Id.*

Here, the Court finds that Defendant has failed to plausibly allege facts sufficient to warrant a dismissal with prejudice in this case. As for the first requisite factor, the facts before the Court do not exhibit a clear record of delay or contumacious conduct by Relators. While the Court acknowledges that there was certainly some delay in Relators serving Defendant with the SAC, it cannot be characterized as a significant period of total inactivity. Indeed, Fifth Circuit precedent has made clear that dismissals with prejudice are generally reserved for "egregious and sometimes outrageous delays." *See Millan v. USAA General Indem. Co.*, 546 F.3d 321, 326–27 (5th Cir. 2008); *see also Callip v. Harris Cnty. Child Welfare Dep't.*, 757 F.2d 1513, 1519 (5th Cir. 1985) (finding a clear record of delay after plaintiff missed nine deadlines in two and one-half years); *Delta Theaters v.*

*Paramount Pictures*, 398 F.2d 323, 325 (5th Cir, 1968) (affirming the district's court decision to order dismissal with prejudice where a fourteen year old case was dormant for about seven years). This is not the situation that we have here. Relators have never missed a deadline during the twelve years that the case has been pending. Indeed, any prolonged inactivity on the docket by Relators has either been in response to one of the Court's various orders or has obtained permission from the Court for an extension. Thus, it cannot be said that Relator acted with the requisite degree of contumacious conduct to warrant dismissal with prejudice. *See Bullard v. Burlington Northern Santa Fe Ry. Co.*, 368 F. App'x. 574, 581 (5th Cir. 2010) (explaining that the Fifth Circuit defines contumacious conduct as a "stubborn resistance to authority.").

As for the second requisite requirement, the Fifth Circuit has emphasized that a district court should not dismiss an action with prejudice *unless* "lesser sanctions have proved futile." *In re Taxotere (Docetaxel) Prods. Liab. Lit.*, 966 F.3d at 360. For example, in *In re Taxotere (Docetaxel) Prods. Liab. Lit.*, the court affirmed the district court's dismissal of an action with prejudice under Rule 41(b). 2025 WL 655796 at *1 (5th Cir. Feb. 28, 2025). In finding that the second requisite requirement supported dismissal with prejudice, the court emphasized that plaintiff continually failed to serve process despite the district court providing multiple extensions and numerous warnings. *Id.* at *2. Thus, the court explained that "it is unclear what lesser sanctions could have been appropriate following the district courts warnings and second chances." *Id.* Here, unlike the plaintiff in *In re Taxotere (Docetaxel) Prods. Liab. Lit.*, Relators have not been warned by the Court numerous times to serve process. In fact, Relators conduct is inapposite. More specifically, on January 13, 2023, Relator received its one and only warning from the Court via a Notice of Impending Dismissal (Dkt. #51). On January 23, 2023, in response to the Court's warning, Relator

filed a verified petition providing good cause as to why Defendant had not yet been served (*See* Dkt. #52 at ¶ 2 (explaining that the delay in service was caused by an accidental change in Relator's counsel email setting which caused the notice to go to their junk mail)). What's more, on February 7, 2023, after the Court granted sixty additional days which service needed to be effectuated, Relator served Defendant that same day (*See* Dkt. #54; Dkt. #55). Accordingly, it cannot be said that "lesser sanctions have proved futile" for Relators.

Because the Court has affirmatively determined that neither of the two requisite factors are present in this case, it need not delve into whether one or more of the aggravating factors is also present. *See Buchanan*, 2024 WL 4057580 at *2 (explaining that in most cases where a plain record of delay or contumacious conduct is found if one of the aggravating factors is also present); *see also Sealed Appellant*, 452 F.3d at 418 (explaining that the presence of requisite factors can alone justify dismissal). Accordingly, the Court finds that Defendant's bases to dismiss Relators' SAC under Rule 41(b) of the Federal Rules of Civil Procedure should be **DENIED**.

## II.    Res Judicata

Defendant argues that the Court should dismiss the SAC, in part, to the extent that it raises claims concerning conduct that predated February 8, 2012, since those claims would be barred by *res judicata* (*See* Dkt. #60 at p. 25; Dkt. #68 at p. 9). In responding, Relator does not disagree with Defendant's contention that any claims concerning conduct that predate February 8, 2012, would be barred by res judicata (Dkt. #67 at p. 19). Indeed, Relator expressly disclaims seeking any damages for Defendant's pre-NMS conduct, thus Defendant's *res judicata* arguments raised in its motion are moot (Dkt. #67 at p. 19). Here, since the parties do not dispute that *res judicata* bars any claims in the SAC concerning conduct that predated February 8, 2012, the Court finds that these claims shall be **DISMISSED** with prejudice.

14

### III.    Government Action Bar

The FCA creates civil liability for persons who "knowingly present a false or fraudulent claim for payment or approval or knowingly makes or uses a false record or statement of material to a false of fraudulent claim." *U.S. ex rel. Schwiezer v. Canon, Inc.*, 9 F4th 269, 271 (5th Cir. 2021) (citation modified); *see also* 31 U.S.C. § 3729(a)(1)(A), (B). The FCA "permits private parties to enforce the statute by filing *qui tam* suits in the name of the government, *id*. at § 3730(b)(1), and incentivizes such whistleblower suits by awarding a substantial share of the fraudulent payments that are recovered, plus attorney's fees and costs, *id*. at § 3730(d)." *Schwizer*, 9 F.4th at 271. However, the FCA limits the types of actions that private plaintiffs can bring, including, as Defendant argues here, those for which the government is a party (the "government action bar"). The government action bar is meant to "prevent parasitic suits which add nothing to the exposure of fraud." *Id*. at 272 (citations omitted); *see also Graham Cnty. Soil & Water Conservation Dist. V. U.S. ex rel Wilson*, 559 U.S. 280, 295 (2010) (explaining that the government action bar was Congress' "effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits.").

The FCA's government action bar applies only when the relator's *qui tam* action "is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3). Put simply, the government action bar applies where the Government is, or has been, a party to a proceeding that was based upon the same allegations or transactions. *Id*. "Whether the government action bar applies is most sensibly analyzed by asking (1) whether the allegations and transactions in this case are already being or have been litigated; (2) whether that litigation is or was in a civil or administrative civil money [penalty] proceeding; and (3) whether the government was a party in

15

the earlier case." *Taul ex rel. United States v. Nagel Enterprises, Inc.*, 2016 WL 304581, at \*4 (N.D. Ala. Jan. 25, 2016).

Defendant argues that Relators' case should be dismissed in its entirety because the government action bar applies (Dkt. #60 at p. 29). More specifically, Defendant argues that Relators' claims fall squarely within the government action bar because the Government has already pursued, and recovered for, the claims found in the SAC in the NMS litigation (Dkt. # 60 at p. 30).[6] Additionally, Defendant asserts that the NMS litigation also provided for a compliance monitoring program for future servicing misconduct occurring within three and a half years after the consent judgment was entered—that is, from February 2012 through September 2015 (Dkt. #60 at p. 31). Thus, according to Defendant, Relators claim to have observed Defendant's FCA violations from 2008 through June 2014, which is the exact same period the NMS Litigation covered (Dkt. #60 at p. 31). By contrast, Relator argues that the government action bar does not apply to their case because they seek to recover only for violations occurring on or after February 9, 2012, which only encompasses conduct that was not covered by the NMS Litigation (Dkt. #67 at p. 20).[7] Additionally, Relator argues that Defendant's claim that its post-settlement conduct is also protected by the FCA's government action bar because the NMS Litigation allowed for a post-

---

[6]   Defendant argues that in the NMS litigation, "the government alleged violations of the FCA based on the same servicing misconduct that Relators allege here—specifically, [Defendant's] purported participation in unfair and deceptive practices in the discharge of their loan servicing activities while involved in HAMP and FHA programs, including misapplying payments, charging unnecessary fees, failing to engage in proper loss-mitigation measures, and robo-signing foreclosure documents. And the government already obtained more than $5 billion to settle these fraud claims." (Dkt. #60 at p. 30) (citation modified).

[7]   Relator argues that by seeking recovery only for violations occurring on or after February 9, 2012 is significant because "the relevant conduct covered by the Government's NMS Litigation all occurred before February 9, 2012 and thus Defendant cannot point to any "civil suit or administrative civil money penalty proceeding where [Defendant's] post-NMS fraud was the subject of a claim by the Government." (Dkt. #67 at p. 20).

settlement monitoring program is both contrary to the plain language of the statute and not supported by the caselaw (Dkt. #67 at p. 22).

In Defendant's Reply, it claims that Relator's Response in Opposition significantly narrowed the parties' dispute regarding the application of the FCA's government action bar to this case (Dkt. #68 at p. 9). More specifically, Defendant contends that Relator's argument against application of the government action bar turns solely on a single legal issue: "Does the compliance monitoring—which occurred pursuant to the terms of the NMS Consent Judgment—constitute part of the NMS Litigation itself, such that it is party of a civil suit?" (Dkt. #68 at p. 9).[8] According to Defendant, the answer to this single legal issue is an unequivocal yes; the compliance monitoring program was part of the NMS litigation (Dkt. #68 at p. 10). Put simply, Defendant is arguing that the compliance monitoring program constitutes a "civil suit" or "administrative civil money penalty proceeding" for purposes of 31 U.S.C. § 3730(e)(3) (*See* Dkt. #68 at p. 10).[9] Relator disagrees. In the Sur-Reply, Relator continues to maintain that the post-NMS monitoring program does not implicate the FCA's government action bar (Dkt. #69 at p. 3–5). Indeed, Relator contends that the SAC identifies novel post-NMS violations of the law none of which could have been or ever were subject to a claim by the Government in the NMS Litigation (Dkt. # 69 at p. 4–5). Alternatively, in the event that the Court disagrees, Relator argues that any of Defendant's

---

[8] Defendant further explains that the parties' dispute regarding the application of the FCA's government action bar ultimately boils down to a narrow timing question: "whether the NMS Litigation bars claims based on conduct that occurred *after* February 8, 2012" (Dkt. #68 at p. 9). According to Defendant, this is a fact that no one can or does dispute, and, therefore, Relator's argument against the application of the government action bar turns solely on the abovementioned legal issue (Dkt. #68 at p. 9).

[9] Additionally, Defendant also contends that "it does not matter that that the government did not recover damages from [Defendant's] during the compliance monitoring period" because "[t]he government action bar applies to *the entire case* to which the government is a party, regardless of whether the government actually pursues and recovers for all the possible fraudulent conduct that the case involves" (Dkt. #68 at p. 10) (citation modified).

improper conduct that the SAC alleges to occurred after November 15, 2015, would not implicate the government action bar since such program expires after three- and one-half years (Dkt. #69 at p. 5); *see also* Dkt. #60-2 at ¶ 15 (detailing the monitoring program's sunset provision).

The parties agree that the FCA's government action bar precludes any claims based on Defendant's improper conduct that occurred on or before February 8, 2012 (*See* Dkt. #67 at p. 20; Dkt. #68 at p. 9). The question for the Court, then, is whether the post-NMS compliance monitoring program constitutes a "civil suit" or "administrative civil money penalty proceeding" under 31 U.S.C. § 3730(e)(3). As discussed above, Defendant argues that the compliance monitoring program is a "civil suit in which the Government is already a party" (Dkt. #68 at p. 10). In reaching this conclusion, Defendant emphasizes two points: (1) the Court retained jurisdiction over the compliance monitoring program in the NMS Litigation; and (2) the Government could have recovered penalties in the NMS Litigation if Defendant had not satisfied the performance standards set forth in the NMS Consent Judgment (Dkt. #68 at p. 10). In contrast, Relator argues that a close review of the compliance monitoring program makes clear that it is neither a "civil suit" nor "administrative civil money penalty proceeding" (Dkt. #69 at p. 4–5). The Court agrees with Relator.

The FCA nowhere defines the term "civil suit" or "administrative civil money penalty proceeding." *See U.S. ex rel. Vermont Nat'l. Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 35 (D.C. Cir. 2022) (explaining that the FCA nowhere defines the phrase "administrative civil money penalty proceeding); *see also Taul ex rel. U.S. v. Nagel Enters. Inc.*, 2016 WL 304581, at *5 (N.D. Ala. Jan 25, 2016) (explaining that the court can find no published opinion directly considering the meaning of "civil suit" as used in 31 U.S.C. § 3730(e)(3)). Additionally, neither the Fifth Circuit

nor this Court have elaborated on what constitutes a "civil suit" or "administrative civil money penalty proceeding" for purposes of 31 U.S.C. § 3730(e)(3). However, the Court finds that analysis of another district court in *Taul ex rel U.S. v. Nagal Enters, Inc.*, to be especially helpful. *See* 2016 WL 304581 at \*5. In that case, the district court engaged in a statutory construction analysis of 31 U.S.C. § 3730(e)(3). *Id*. Ultimately, the district court determined that "the couple of civil suits with administrative penalties suggests that 3730(e)(3)'s. . . bar is limited to civil actions resembling administrative monetary penalties; i.e., *in personam* actions for money. *Id*. (citation modified).

Here, applying an analysis similar to the district court in *Taul*, the Court finds that the post-NMS compliance monitoring program does not constitute a "civil suit" or a "administrative civil money penalty proceeding" under 31 U.S.C. § 3730(e)(3). The compliance monitoring program cannot be said to be an *in personam* action for money. In fact, the compliance monitoring program was only an effect of the prior *in personam* action for money but does not by itself constitute an *in personam* action for money. Additionally, Defendant makes no contention that the Government has been a party to an administrative civil money penalty proceeding pertaining to the loan provider services provided by Defendant post-NMS Litigation—i.e., the violations committed from February 9, 2012, onward. Accordingly, the Court finds that Defendant's bases to Dismiss Relator's SAC under the government action bar should be **DENIED**

## IV.    **Public Disclosure Bar**

Having determined that Relator's case should not be dismissed in its entirety under the FCA's government action bar, the Court must now determine if Relator's case should be dismissed, in its entirety, under the FCA's public disclosure bar.  The second limitation that the FCA places on the types of actions that a relator can bring include those "for which the allegations have already been publicly disclosed (the "public disclosure bar"). *Schweizer*, 9 F.4th 269 at 272. Just like the

government action bar, the purpose of the public disclosure bar is to "prevent rewarding parasitic suits which add nothing to the exposure of fraud." *Id.* (citation modified). To determine whether a relator's claims are barred under the FCA's public disclosure provision, the Fifth Circuit applies a three-part test, asking: "(1) whether there has been a public disclosure of allegations or transactions; (2) whether the qui tam action is based upon such publicly disclosed allegations; and (3) if so, whether the relator is the original source of the information." *U.S. ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021) (citation modified). However, "the court is not required to rigidly follow the three steps." *U.S. Fischer v. Ocwen Loan Servs., LLC*, WL 2015 WL 4039929, at *6 (E.D. Tex. July 1, 2015) (citing *U.S. ex rel. Jamison v. MxKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011)). Indeed, "combining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the allegations and transactions that must be publicly disclosed in step one." *Id.* (citation modified). Under the test, "the court compares the allegations contained in the original complaint with public disclosures available at the time the complaint was filed. If the complaint could have been synthesized from the disclosures, then [the court] determine[s] if the complaint was the original source of the disclosures." *U.S. ex rel. Vaugh v. Harris Cnty. Hosp. Dist.*, 2023 WL 8649876, at *3 (5th Cir. Dec. 14, 2023) (citation modified).

Defendant argues that the Court should also dismiss Relators' case, in its entirety, because it is barred by the public disclosure provision of the FCA (Dkt. #60 at p. 32). More specifically, Defendant argues that the public disclosure bar applies to this case because Relators' claims are based on Defendant's alleged loan modification and servicing violations that were publicly disclosed prior to the filing of this action, and neither Relator is the original source (Dkt. #60 at p. 32). In contrast, Relator argues that the public disclose bar does not apply because (1) Defendant

failed to identify any public disclosure of the post-NMS fraud at issue, and (2) Relator is the original source. (Dkt. #67 at p. 24–28). In its Reply, Defendant continues to contend that the SAC's allegations of fraud were publicly disclosed and that Relator does not qualify as an original source (Dkt. #68 at p. 11–12). Similarly, in his Sur-Reply, Relator also continues to content that the SAC's allegations of fraud were not publicly disclosed and that Relators qualifies as an original source, thus the FCA's public disclosure bar does not apply (Dkt. #69 at p. 5–7). The Court agrees with Defendant that the allegations of fraud in the SAC are based upon publicly disclosed allegations. However, this alone is not sufficient to warrant dismissal of the SAC in its entirety, because the Court agrees that it is plausible that Relators qualify as an original source. The Court will address each public disclosure bar factor in turn.

### A.    Public Disclosure of Allegations or Transactions

To determine whether the public disclosure bar precludes Relators' FCA claims, the Court must determine if there has been a public disclosure of the allegations or transactions, and whether the *qui tam* action is substantially the same as those publicly disclosed allegations. *See Jamison*, 649 F.3d at 327 ("[C]ombining the first two step can be useful . . ."). To do this, the Court compares the allegations contained in Relators' SAC with public disclosures at the time the complaint was filed. *See U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 144 (5th Cir. 2017). If the SAC could have been synthesized from the public disclosures, then the Court must determine if Relators were the original source of the disclosures. *Id.*

Defendant points to the disclosures in the NMS Litigation and various news media reports to show that Relators' FCA allegations in the SAC are based on its public disclosures (Dkt. #60 at p. 33). More specifically, Defendant contends that these public disclosures reported the alleged loan modification and servicing violations which the Relators' claims are based (Dkt. #60 at p. 32).

Although Relator does not dispute that these documents qualify as public disclosures because they are among the sources enumerated in 31 U.S.C. § 3730(e)(4)(A)(i)–(iii), he argues that the public documents do not relate to the post-NMS fraud alleged in the SAC (Dkt. #67 at p. 24).

A relator's FCA complaint is "based upon public disclosures if one could have produced the substance of the complaint merely by synthesizing the public disclosures' description of the joint venture scheme." *U.S. ex rel. Vaughn*, 2023 WL 8649876 at *3 (citing *Solomon* 878 F.3d at 144). Thus, "if the public disclosure was sufficient to set the government on the trail of fraud then there will be sufficient indica of an FCA violation to bar a subsequently filed FCA complaint." *Id.* The Fifth Circuit has adopted an X + Y = Z test to determine if a public disclosure is "sufficient to set the government on the trail of fraud." Under this approach, "the combination of X and Y must be revealed, from which the readers and listeners may infer Z. Z is an inference of fraud made under the FCA, while X and Y are two required elements for the inference: a misrepresented state of fact and a true state of facts. The presence of one or the other in the public dominion, but not both, cannot be expected to set government investigation on the trail of fraud." *Id.* Put simply, "the public disclosures must provide specific details about the fraudulent scheme and the types of actors involved in it sufficient to set the government on the trail of fraud." *Id.*

Here, the Court finds that the information prior to Relators' SCA was sufficient to set the government on the trail of fraud. A disclosure by the news media in 2010 provided that Defendant was "having difficulty properly handling homeowner's modification applications and was breaking HAMP rules" (Dkt. #60 at p. 34). Further, in the NMS Complaint, the Government provides detailed allegations relating to Defendant's noncompliance with servicing, loan modification, and foreclosure obligation, which are the same as the noncompliance allegations made by Relators in

the SAC. Thus, these public disclosures contain information that would lead to an inference of fraud—that contrary to its representations, Defendant was violating servicing related laws and regulations during its participation in HAMP. Accordingly, Relators' *qui tam* action may be dismissed in its entirety unless Relators qualifies as an original source under the FCA.

### B.    Original Source

Even though the Court determined that Relators' SAC was substantially the same as the public disclosures, their FCA complaint may proceed if they are the original source of the publicly disclosed information. A realtor qualifies as an original source under the FCA is he: (1) "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and (2) "who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). When determining whether a realtor is an original source, the Court "must examine the factual subtleties of the case before it and attempt to strike a balance between those individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim." *See U.S. ex rel. Mitchell v. CIT Bank, N.A.*, 2022 WL 135438, at *6 (E.D. Tex. Jan. 13, 2022). Defendant argues that Relators fail to qualify as an original source because they both (1) lack independent knowledge as to the HAMP fraud allegations, and (2) cannot demonstrate that their allegations materially add to the publicly disclosed allegations (*See* Dkt. #60 at p. 36–38; Dkt. #68 at p. 12–13). The Court examines these in turn.

### 1.    Independent Knowledge

The Fifth Circuit has held that a realtor's knowledge is independent "if it is not derived from the public disclosures." *Solomon*, 878 F.3d at 147. Defendant argues that Realtors' knowledge

is not independent because it is derived from the public disclosures (*See* Dkt. #60 at p. 37–38; Dkt. #68 at p. 12–13). In support, Defendant points again to Defendants serving failures that were widely disclosed in multiple sources, including news stories and filings in the NMS Litigation (Dkt. #60 at p. 37). Relator disagrees, claiming that his knowledge is independent because it came from his time working in the mortgage modification industry and from his own investigation into Defendant's practices, which included an extensive interview with a former compliance auditor for Defendant (Dkt. #67 at p. 26).

Here, the Court finds that Relator has plausibly pled a claim for relief under the FCA—i.e., it is not precluded under the public disclosure bar.  Although it is true that Defendant's servicing failures were widely disclosed in multiple public disclosures prior to the filing of the SAC, Relator has presented evidence that his knowledge came from direct exposure to Defendant's loan servicing misconduct. (*See* Dkt. #67 at p. 26). Accordingly, the Court finds that Defendant's bases to Dismiss Relator's SAC under the public action bar should be **DENIED**.

### 2.    Materially Adds

The Fifth Circuit has not yet expounded on the meaning of the "materially adds" language in 31 U.S.C. § 3730(e)(4)(B), however, two recent decisions in this circuit have provided useful guidance on determining when an original source qualifies as having materially added to a public disclosure. First, in *U.S. ex rel. Vaugh*, the Fifth Circuit relied on a decision from the First Circuit to conclude that "an addition is material if it is of such a nature that knowledge of the item would affect a person's decision-making, or it is significant, or it is essential." 2023 WL 8649876 at *4 (citation modified). Second, in *U.S. ex rel. Mitchell v. CIT Bank, N.A.*, this Court engaged in statutory interpretation and determined that a "relator's information materially adds to the publicly disclosed allegations or transaction if it significantly contributes information that would affect a

persons decision-making." 2022 WL 135438 at *7. Further, this Court also looked to other circuits who have adopted definitions of "materially adds" and found that "a realtor who merely adds background information or details about a known fraudulent scheme will be found not to have materially added to the publicly disclosed information." *Id*. at *8. Thus, the Court must determine whether Relators satisfies this standard. The Court finds that Relators do.

Here, the Court finds that Realtors do more than just merely add background information to the existing public disclosures—they provide specific details about Defendant's fraud and scienter. Indeed, while the public disclosure in this case only alleged general concerns over Defendant servicing failures, the SAC does much more—it adds detailed and specific claims as well as allegations regarding Defendant's pervasive fraud and complete disregard for its obligations (See Dkt. #67 at p. 27–29 (providing that "management not only know but instructed noncompliance" and that Defendant "has committed many new violations in the years to come")). Accordingly, the Court finds that Defendant's bases to Dismiss Relator's SAC under the public action bar should be **DENIED**.

## V.    TILA Claims or Similar State Law Claims

The Court now turns to Defendant's final remaining bases to dismiss, in part, some of Relator's claims contained in the SAC: whether "Relators' claims under TILA and similar state laws must be dismissed because none of these laws applies to the loan modifications at issue here as a matter of law" (Dkt. #60 at p. 38). Under TILA, loan service providers, like Defendant, are required to provide consumers with a right of recission in certain credit transactions. *See* 18 U.S.C. § 1635(a) (providing for a right to rescind in "any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom the credit

is extended."). However, a loan service provider is not always required to provide a consumer with a right of recission. Indeed, TILA specifically provides a list of "exempted transactions" in § 1635(e) which include: "(1) a residential mortgage transaction as defined in section 1602(w) of this title; (2) a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit secured by an interest in the same property; (3) a transaction in which an agency of a State is the creditor; or (4) advances under a preexisting open end credit plan if a security interest has already been retained or acquired and such advances are in accordance with previously established credit limit for such plan." 18 U.S.C. § 1635(e)(1)–(4).

Defendant argues that neither TILA nor similar state laws (Texas and Massachusetts) apply to the loan modification at issue in this case as a matter of law (Dkt. #60 at p. 38). More specifically, Defendant argues that it has been well-established that TILA does not apply to the loan modifications at issue because they are simply an affirmation and restructuring of the original purchase-money mortgage (Dkt. #60 at p. 38). Relator does dispute that Defendant's argument relating to the applicability of TILA may be true for some loan modification (Dkt. #67 at p. 29). Relator argues, however, that the loan modification at issue did not simply involve new loaned amounts of principal in the form of amounts past due—they involved new amounts from those not yet due and for advances never actually made (Dkt. #67 at p. 29).

Here, the Court finds that Relators have plausibly alleged that the exceptions to the right of recission under TILA and other similar state laws do not apply to the loan modification at issue. Specifically, Relators allege in the SAC at issue that Defendant also capitalized amounts not yet due and advances never actually made (See Dkt. #79 at ¶ 32 (alleging that "pursuant to the language

quoted in the previous paragraph, in [Defendant's] HAMP loan modification contract, [Defendant], as the Servicer, *acquired* a new, first-lien security interest in the residential real property for its HAMP modification advance.")). Accordingly, the Court finds that Defendant's bases to Dismiss Relator's SAC, in part, under TILA or other similar state laws should be **DENIED**.

## VI.    Relator's Alternative Request for Leave to Amend

Lastly, in the event that the Court finds any of Defendant's arguments for dismissal compelling—specifically, Defendant's arguments regarding the FCA's government-disclosure or public-disclosure bars—Relator respectfully requests leave to amend to remedy such issues (Dkt. #67 at p. 30). However, having denied the Defendant's argument for dismissal of the SAC, the Court need not take up whether it is necessary to grant Relator leave to amend.

## CONCLUSION

It is therefore **ORDERED** that Defendant Well Fargo Bank, N.A.'s Motion to Dismiss (Dkt. #60) is hereby **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

**SIGNED this 30th day of September, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE